**State of Minnesota**

| | |
|---|---|
| County | |
| Hennepin | |

**District Court**

| | |
|---|---|
| Judicial District: | Fourth |
| Court File Number: | |
| Case Type: | ADA/Personal Injury/Class Action |

Michael Fiorito on behalf of himself and all othes similarly situated

Plaintiff

vs

**Civil Summons**

Metropolitan Council, Delta Airlines, Sun Country Airlines

Defendant

METROPOLITAN COUNCIL - General COUSEL

This Summons is directed to (name of Defendant):

METROPOLITAN COUNCIL -

1.     **You are being sued**. The Plaintiff has started a lawsuit against you. The *Complaint* is attached to this *Summons*. Do not throw these papers away. They are official papers that start a lawsuit and affect your legal rights, even if nothing has been filed with the court and even if there is no court file number on this *Summons*.

2.     **You must BOTH reply, in writing, AND get a copy of your reply to the person/business who is suing you within 21 days to protect your rights.** Your reply is called an *Answer*. Getting your reply to the Plaintiff is called service. You must serve a copy of your *Answer or Answer and Counterclaim* (Answer) within 21 days from the date you received the *Summons* and *Complaint*.

     ANSWER: You can find the *Answer* form and instructions on the MN Judicial Branch website at www.mncourts.gov/forms under the "Civil" category.  The instructions will explain in detail how to fill out the *Answer* form.

3.     **You must respond to each claim.**  The *Answer* is your written response to the Plaintiff's *Complaint*. In your *Answer* you must state whether you agree or disagree with each paragraph of the *Complaint*. If you think the Plaintiff should not be given everything they asked for in the *Complaint*, you must say that in your *Answer*.

4.    SERVICE: **You may lose your case if you do not send a written response to the Plaintiff.** If you do not serve a written *Answer* within 21 days, you may lose this case by default. You will not get to tell your side of the story. If you choose not to respond, the Plaintiff may be awarded everything they asked for in their *Complaint*. If you agree with the claims stated in the *Complaint*, you don't need to respond. A default judgment can than be entered against you for what the Plaintiff asked for in the *Complaint*.

To protect your rights, you must serve a copy of your *Answer* on the person who signed this *Summons* in person or by mail at this address:

Michael Fiorito 19000 Statford Road  #105  Minnetonka MN 55345

_____.

5.    Carefully read the Instructions (CIV301) for the *Answer* for your next steps.

6.    **Legal Assistance.** You may wish to get legal help from an attorney. If you do not have an attorney and would like legal help:

- Visit www.mncourts.gov/selfhelp and click on the "Legal Advice Clinics" tab to get more information about legal clinics in each Minnesota county.

- Court Administration may have information about places where you can get legal assistance.

**NOTE: Even if you cannot get legal help, you must still serve a written *Answer* to protect your rights or you may lose the case.**

7.    **Alternative Dispute Resolution (ADR).** The parties may agree to or be ordered to participate in an ADR process under Rule 114 of the Minnesota Rules of Practice. You must still serve your written *Answer,* even if you expect to use ADR.

December 1, 2024

_____
Date

_____
Signature

Name: Michael Fiorito
_____

Address:_____19000 Stratford Road # 105_____

City, State, Zip: _____ Minnetonka MN  55345 _____

_____

357 1659 _____

Telephone: _____  763

E-mail: _____

**State of Minnesota**

| County |
|---|
| Hennepin |

**District Court**

| Judicial District: | Fourth |
|---|---|
| Court File Number: | TBD |
| Case Type: | ADA/Pesonal Injury/Class Action/ |

Michael Fiorito
_____
Plaintiff

vs

**Civil Complaint**

Metropolitan Council, Delta Airlines, Sun
Country Airlines
_____
Defendant

The Plaintiff makes the following complaints against the Defendant:

If you have more than 1 complaint against Defendant, list each complaint separately, including any supporting facts.

1. _____ See Attached Pages
   _____
   _____

2. _____
   _____
   _____

3. _____
   _____

4. _____
   _____

5. For any other relief the court feels is fair and equitable.
   _____

Based on the complaints above, Plaintiff demands the following relief:

1. _____ See Attached Pages
   _____
   _____

2. _____
   _____
   _____

**ATTACHMENT PAGE**

**INTRODUCTION: I**

1. Michael Fiorito is a regular passenger on Metro Transit Buses and the El. He rides Metro Transit to his former job, to job interviews, medical appointments, and job training throughout the Twin Cities almost every day since he moved to the Twin Cities in February 2024. Metro Transit is the public transit system for the Minneapolis-St. Paul Twin Cities Area which is owned and operated by Defendant Metropolitan Council,

2. Mr. Fiorito is a man who suffers from severe TBI, osteoporosis, poly-arthritis, psoriatic arthritis, Mr. Fiorito had total hip replacement surgery on May 1, 2024, and uses a cane and sometimes walker to ambulate. His TBI causes him random, sporadic bouts of dizziness, double vision, shifting depth perception, among other vision related problems. Mr. Fioritos ability to walk up stairs is very limited, his ability to walk downstairs is even more limited. He is subjected to level 8-10 pain every day. Mr. Fioritos right ankle and right great toe are scheduled for fusion surgery in November 2024.

In 2024 Mr. Fiorito has already undergone several surgeries in an attempt to make him more ambulatory. Mr. Fiorito was in a wheelchair for most of 2023. Mr. Fiorito has extensive medical limitations on walking, standing and bending. Mr. Fioritos left Achilles tendon has been torn twice, there is currently significant damage to Mr. Fioritos right ankle tendons and bones

1

3. Since February 10, 2024, Mr. Fiorito has experienced approximately 31 occasions when he was unable to navigate the Lake Street Midtown Train Station ("Lake Street Station") also known as the Blue Line. Often he was unable to get to work, a job interview or medical appointment because the Elevators on both sides of the El platform were out of order and or locked; on over two dozen occasions Mr. Fiorito and other disabled persons were unable to get off the El platform because both elevators were out of order and locked and as a result Mr. Fiorito and other disabled persons were left stranded on the El Platform and forced to call paramedics to muscle them down the three stories of stairs or take the el to the next platform 4 miles away and find a way home

4. On or about March 19, 2024, April 5, 2024, and May 15, 2024, and other dates  Mr. Fiorito was denied access to the Lake Street Station Blue Line because both elevators and escalators were out of order and there was no way for him to get up to the platform

5. The Lake Street Platform is nearly 3 stories high. It has 3 stories of stairs to navigate. Going up the platform a person can use the escalator or the elevator. Going down however is a different story, one must walk down 3 stories of steps to get to the ground floor to catch the bus on Lake Street, Mr. Fiorito does not have that ability. Mr. Fiorito tried to walk down those stairs and fell badly on or about May 28, 2024, he fell down the stairs and injured

himself badly because once again the elevators were not functioning and he was forced to use the stairs to get off the platform

6. On or About March 25, 2024, Mr. Fiorito could not go to a job interview because when he arrived at the Lake Street Station the escalators and elevators were inoperable

7. On or about September 18, 2024, Mr. Fiorito arrived at the Lake Street Station El and departed the el and again discovered that both elevators were out of order again. Another man named Mr. Dear (unsure of spelling) was a double amputee and in a wheel chair and departed the train at the same time as Mr. Fiorito. He had no way to get off the platform and had to call 911.  Mr. Fiorito waited for another train leaving for downtown Minneapolis, when it arrived he boarded it and took the train to the U.S. Bank Stadium, got off there and had to call a cab to get back to his home on Lake Street. Mr. Fiorito has done this approximately 9 times since he moved to Minneapolis

8. On or about September 25, 2024, Mr. Fiorito met Dennis Rains a man who walks with a cane and is handicapped. Mr. Rains was unable to use the Lake Street Station because both the elevators were not working. Mr. Rains stated that he has been denied access to the Lake Street Station Train dozens of times over the last six months due to the elevators being out of service and the escalators not working

3

9. These ongoing, repeated,  safety failures all have caused Mr. Fiorito and other handicapped Class Members injury, significant injury and significant exposure to injury and severe anxiety because Mr. Fiorito and others similarly situated cannot properly and easily ambulate

10. These repeated, ongoing, safety failures have caused Mr. Fiorito to miss out on job opportunities and medical appointments. The Defendants failures to properly maintain safety equipment and ensure that the Lake Street Station is accessible to everyone has caused Mr. Fiorito and other similarly situated persons to lose economic opportunities.

11. The Defendants willful refusal to properly maintain the escalators and elevators at this station as described herein deny Mr. Fiorito and other handicapped persons access to it

12. On or about April 13, 2024, May 16, 2024, and September 25, 2024 and other times Mr. Fiorito spoke to the Metro Transit Police who were stationed on the Lake Street Station and complained to them about this problem and every time each officer told Mr. Fiorito that they have made extensive reports to the Defendant about the ongoing lack of handicap access there but the Defendant refuses to fix the problem. There was a period of time on or about May 3, 2024, to May 17, 2024, when the elevators on BOTH SIDES of the Lake Street Station were out of order. Mr. Fiorito has called the Defendant on multiple occasions and complained about these safety issues

4

however his complaints have not caused the Defendant to correct the

problem

13. A witness and victim of the defendants actions and inactions  Mr. Parshall

expressed to Mr. Fiorito on or about September 25, 2024, that he had fallen

several times while trying to attempt to get to the bottom of the platform

after getting off the train at the Lake Street Station & injured himself

**PART II**

14. Mr. Fiorito realleges and incorporates by reference all preceding paragraphs

and allegations

15. On or about May 28, 2024, the Defendant started to remodel the Lake Street

Bus Shelter located at the Lake Street Midtown Station. Mr. Fiorito takes the

bus back to his home after work. His routine route is taking the train to the

Lake Street Station and then when he gets to ground level (if he can) he

boards the 21 Lake Street Bus going east.

16. For the above reasons Mr. Fiorito could not take the East Bus because the

Elevator on located on the South Side of the Platform was constantly

inoperable. Which forced Mr. Fiorito to take the North Side Elevator if it was

working. Mr. Fiorito could not cross Lake Street to get on the east bound bus

because of the construction to the sidewalk and street areas. Mr. Fiorito uses

5

a cane and sometimes walker and the uneven terrain is always muddy, slippery, and full of chunks of loose concreate and two by fours. In addition the traffic patterns and conduct of the drivers of vehicles in this intersection made attempting to traverse it a very dangerous exercise. Mr. Fiorito and other similarly situated individuals were not able to access the 21 Lake Street Bus going south due to these issues. The last occurrence of this for Mr. Fiorito was on or about September 21, 2024.  Mr. Fiorito then at times had to call a cab, an uber or try to walk home. On or about August 25, 2024, Mr. Fiorito tried to walk home and fell on the uneven terrain by the railroad tracks as a result of not being able to get on the bus as described above. This has happened to Mr. Fiorito over 20 times.

17. Even if Mr. Fiorito could get to the other side of the street the Defendant placed the bus stop on the edge of the street. Mr. Fiorito, Mr. Parshall and others similarly situated have to **walk in the street**  to get to the bus stop to catch the 21 Lake Street Bus going south

18. On or about September 12, 2024, Plaintiff Fiorito called Defendant Metro Transit and complained about the dangerous position of the bus stop and the Defendant took no action.

19. The Defendants actions as described herein deny, continue to deny, Mr. Fiorito, the named plaintiffs and the Class access to public transportation and endanger Mr. Fiorito and the Class Members safety and well being

6

**PART III**

## 20.   The Right to Accessible Airport Facilities

Airlines and U.S. airport operators are both responsible for the accessibility of airport facilities. The Air Carrier Access (ACAA) and Department's implementing regulation in 14 CFR Part 382 cover airlines' obligations. Various other federal statutes and regulations apply to U.S. airport operators, for example, the Americans with Disabilities Act (ADA), Section 504 of the Rehabilitation Act of 1973 and their implementing regulations. Airlines and airport operators have concurrent obligations to ensure accessibility of airport facilities.

The airline Bill of Rights describes the obligations of airlines under the ACAA. In general, airlines must ensure that terminal facilities that they own, lease or control are readily accessible and usable by passengers with disabilities at U.S. airports. Airports are responsible for ensuring compliance of facilities that they own, operate or lease to other parties, including airlines. Airlines must ensure an access to the airport and its surrounding facilities. When level-entry boarding is not available, such as boarding via a jet bridge, airlines and U.S. airports must ensure ramps or mechanical lifts are available to service most flights.

The above information makes clear that airlines and airports are socially and legally responsible for ensuring that handicapped individuals like Mr. Fiorito and the Class Members

7

have access to the airport terminals and facilities. Because Mr. Fiorito and the Class Members are all poor and mostly minorities they are denied access to the airport due to the above failures of Defendant Metro Transit and the airlines themselves thus Delta Airlines and Sun Country Airlines are both proper Defendants in this case.

21. Mr. Fiorito and members of the class are denied the opportunity to travel to the airport when they choose as a result of the Defendants actions. They are denied the opportunity to seek out employment at the airport and if they had such employment they would not be able to maintain it due to the Defendants denying them access to the terminals because they are denied access to public transportation on Lake Street as described herein

22. The willful and purposeful failure of the Defendants to properly and adequately maintain the facilities as outlined above violates the Americans with Disabilities Act (ADA) (42 USC 12131), the Federal Rehabilitation Act (29 USC 794) and the Minnesota Human Rights Act (MHRA) (Minn.Stat. 363.A12), and the regulations implementing those statutes. In addition, the failure of Defendant Metro Transit to ensure that the elevators and escalators work and that the bus stop listed above is safely accessible to disabled persons violates the ADA, MHRA, and the Federal Rehabilitation Act and the regulations implementing those statutes

23. Mr. Fiorito brings this lawsuit requesting injunctive relief, an award of all damages allowed by statute, class certification, punitive, presumed, and compensatory damages, a declaration that defendants denied handicapped individuals access to public transportation, and attorney's fees and costs

8

## JURISDICTION:

24. This Court has jurisdiction over Plaintiffs case because it asserts claims based on Federal and Minnesota State Law

25. Venue is proper in this district as the acts occurred in the District of Minnesota

## PARTIES:

26. Plaintiff Michael Fiorito, Joseph Parshall, and the Class Members reside in Minneapolis, Minnesota during the relevant time period

27. Mr. Fiorito is a disabled individual

28. Mr. Parshall is a disabled individual (see attached affidavit Attachment A)

29. The Class Members are all persons who are disabled

30. Defendant Metropolitan Council is the regional policy-making body, planning agency, and provider of essential services for the Twin Cities Metropolitan region, created by the Minnesota Legislature. It is a political subdivision of the State of Minnesota, this Defendant operates the Metro Transit, which is one of Defendants programs and services, as that term is use by Minn. Stat. 363A.12

31. Metro Transit is a public transportation system that provides bus, rail and other transit services in the Twin Cities metropolitan area

32. Delta Airlines is headquartered at the Minneapolis, St. Paul Airport and is responsible for the connecting train platforms there referred normally as Terminal one and Terminal Two.

9

33. Sun County Airlines is also headquartered at the Minneapolis, St. Paul Airport and is also a responsible party for Terminal One and Terminal Two

FACTS:

34. Mr. Fiorito and the other plaintiffs are regular passengers on Metro Transit Buses and Trains in the Twin Cities Metro area

35. Among other destinations Mr. Fiorito and the other Plaintiffs regularly ride Metro Transit Buses and Trains between their homes in Minneapolis and their other destinations.

36. Mr. Fiorito and other class members (to the best of his knowledge) intend to continue using Metro Transit buses and trains in the future

37. As noted above Mr. Fiorito and other members of the class encountered barriers and obstacles to his and their access to bus and train service provided by the Defendants

38. On several occasions Mr. Fiorito notified metro transit personal of the above issues with the Lake Street Mid Town Station Train and bus stop

39. All of the defendants have known about the problems Plaintiffs were experiencing but failed to take adequate action to correct them and prevent them from re-occurring

40. The Defendants failed to implement adequate and effective measures and failed to provide supervisory action to prevent the kinds of problems Mr. Fiorito and other Class Members experienced as outlined herein

41. Defendant Delta Airlines and Sun Country have a duty to ensure that their terminals are accessible to everyone. By not taking action, when they have known action was required. they denied Mr. Fiorito and other Plaintiffs access to the Terminals

10

42. The actions, failures of the defendants caused Mr. Fiortio and the other Class Members harm, including but not limited, to fear, anxiety, stress, humiliation and physical injury. The Defendants actions and inactions also caused Mr. Fiorito and other Plaintiffs to incur out of pocket expenses and in some cases cause them to be physically injured. Several times Mr. Fiorito and other class members have lost job opportunities because due to a lack of accessibility

43. A. Affidavit: I declare under penalty of perjury pursuant to 28 U.S.C. 1746 that the information contained herein is true and accurate to the best of my memory. For information I do not have firsthand knowledge of I believe it to be true upon information and belief.

**FIRST CAUSE OF ACTION:**

**VIOLATION OF THE AMERICANS WITH DISABILTIES ACT (ADA)**

44. Plaintiff realleges all preceding paragraphs and incorporates them by reference

45. Mr. Fiorito and Mr. Parshall are persons with a disability as that term is used in Title II of the ADA (42 USC 1213).

46. Upon information and belief the other Class Members are all also disabled persons.

47. Defendant Metropolitan Count is a public service as that term is used in the ADA. The Defendant Airlines are also a public service by extension in that they control and manage Terminals One and Two

48. Defendant's actions and failures to act violated the requirements of the ADA to provide full and equal access to and benefit from the defendants service, including adequately and effectively ensuring that the trains and buses are accessible, that disabled persons can utilize the above buses and train station

11

to get to and from the terminals. The defendants have failed to ensure that the elevators and escalators are properly serviced.

49. Defendants actions, omissions, policies, and practices discriminated against Plaintiffs on the basis of disability and denied them equal benefit of their services, programs, and activities in violation of Title II of the ADA 42 U.S.C. 12132 and its implementing regulations (28 C.F.R. Part 35)

50. As a result of Defendants actions, omissions, policies and practices, and their violations of Title II of the ADA, described in this complaint, Mr. Fiorito and other Plaintiffs including Mr. Parshall suffered harm as described herein

**SECOND CAUSE OF ACTION**

**VIOLATION OF THE FEDERAL REHABIITATION ACT**

51. Plaintiffs reallege the contents of paragraphs 1-48 and incorporates them by reference

52. Mr. Fiorito and Mr. Parshall are persons with a disability as that term is used in the Federal Rehabilitation Act

53. To the best of Plaintiffs knowledge and belief, Defendant Metro Transit receives federal funds for the operation of Metro Transit

54. Defendant Metropolitan Council is a public service as that term is used in the Federal Rehabilitation Act

55. Defendants actions, omissions, policies and practices discriminated against Plaintiffs on the basis of disability and denied Mr. Fiorito and other Plaintiffs full and equal access to and benefit from Metro Transit Services and the

12

airport terminals, including adequately repairing and keeping the escalators and elevators operational, by continuing to employ the same company to inadequately repair the elevators and escalators and failing to make the bus stop referenced above accessible without putting them in danger

56. Defendant airlines failed to ensure that their terminals are accessible to persons with disabilities

57. As a result of Defendants actions, omissions, policies and practices, and its violations of the Federal Rehabilitation Act, described in this complaint, Plaintiff Mr. Fiorito and other Plaintiffs suffered substantial harm and were denied access to public transportation and airport facilities and opportunities

**THIRD CAUSE OF ACTION**

**VIOLATION OF THE MINNESOTA HUMAN RIGHTS ACT (MHRA)**

58. Plaintiff realleges paragraphs 1-55 here

59. Mr. Fiorito, named Plaintiffs and the Class Members are persons with disabilities as that term is used in the MHRA

60. Defendant Metropolitan Council is a public service as that term is used in the MHRA

61. Delta Airlines and Sun Country airlines are by extension companies that offer public services as that term is used in the MHRA (the airlines) since Terminals One and Two are public facilities which they manage and have control over

62. **Defendant's actions, failures, policies and practices violated the requirements of the MHRA to provide full and equal access to and benefit from Metro Transit Services and the Terminals, including adequately and**

13

effectively, training, repairing, supervising, and inspecting the transit areas that lead to and from the Terminals

63. Defendant's actions, failures, policies, and practices also failed to ensure Plaintiffs program access to the programs, services and facilities of Metro Transit, the airport via the terminals in violation of Minn.Stat. 363A.12 and 363A.03, Subd. 33

64. Defendants actions also constitute violations of Title VII of the Civil Rights Act of 1964

Because Plaintiffs were unable to seek out employment at the airport due to their inability to access the terminals via the blue line train from the Lake Street Station as described herein. This represents a separate cause of action

65. Defendant's action, failures, omissions, policies, and practices have subjected Plaintiffs, known and unknown, to illegal discrimination by reason of their disability in violation of Minn.Stat. 363A.12

66. As a result of Defendants actions, omissions, failure to act, failure to correct, policies and practices and they're violations of the Minnesota Human Rights Act described in this complaint, Plaintiffs suffered the harms described outlined herein

## RELIEF REQUESTED

Plaintiffs, therefore, respectfully requests that this Honorable Court issue the following relief:

A. Order the Defendants to fully and adequately repair the elevators and escalators at the Lake Street Midtown Station and to make available to any handicapped individual alternate means of transportation when those transports are inoperable.

14

B. For Defendant Metro Transit to reveal the names of the companies that have been hired to fix the escalators and elevators at the Lake Street Midtown Station since August 1, 2022.

C. Order The Airlines to implement a voluntary third-party inspection program where they ensure that handicapped persons access to they're terminals are available at all times through inspections by specifically inspecting the Midtown Lake Street El and to create an effective plan of action and policies to ensure that handicapped persons living in the Lake Street Mid Town Train and Bus Station area are no longer denied access to their terminals

D. Order all defendants to remove and repair the barriers outlined herein

E. Order Metro Transit to rework and re-engineer the bus stop at the Lake Street Midtown station so that handicapped persons do not have to literally walk in the street to get to the bus stop

F. Order Defendants to adopt and implement effective policies to ensure customers who are handicapped receive full and equal access to and benefit from Metro Transit service and programs and have full access to the Terminals

G. Order any such other and further action by Defendants that may be necessary to enforce the requirements of the ADA, the Federal Rehabilitation Act, the MHRA and the Civil Rights Act of 1964 as they pertain to providing services for people who are handicapped and allow such persons access to the terminals for employment purposes and to deter future violations by the Defendants

H. Award Plaintiff Michael Fiorito compensatory $50,000 damages pursuant to Minn.Stat. 363A Subd. 6 and Minn.Stat. 363A.29, Subd. 4, the ADA, the Federal Rehabilitation Act and the Civil Rights Act of 1964

I. Award punitive damages in favor of Plaintiff Michael Fiorito and against Defendants in the amount of $50,000 pursuant to Minn.Stat. 363A.33, Subd.6, and Minn.Stat. 363A.29, Subd. 4

15

J.   Award Plaintiff Michael Fiorito treble damages, pursuant to Minn.Stat.
     363A.33, Subd. 6, and Minn.Stat. 363.29, Subd. 4;

K.   Order Defendants to pay civil penalties pursuant to Minn.Stat. 363A.33,
     Aubd. 6, and Minn.Stat. 363A.29, Subd. 4; and

L.   Award Plaintiffs Statutory attorney's fees and expenses pursuant to
     Minn.Stat. 363A.33, Subd. 7, the ADA, and the Federal Rehabilitation Act

M.   Award Named Plaintiff Joseph Parshall punitive and compensatory damages
     in the amount of $10,000

N.   Award known and unknown Class Plaintiffs an amount to be determined by a
     jury

CONCLUSION


     Were this train and bus station located in Eden Prairie or Edina the

elevators would never be out of service for days on end nor would the escalators

be inoperable for such prolonged periods of time.  But because the people who

the Lake Street Mid Town Station serves are poor black, Hispanic and Native

people no one cares.  This is a reflection of our society and a sad tribute to the

hypocrisy of Minnesota and its empty rhetoric that we are all created equal.

     The Courts are the only institution that can remedy such blatant

discrimination and callousness toward the less fortunate and the poor.

16

Respectfully Submitted,

/s/_____

Michael Fiorito, *pro se*           *763 357 1659*

AFFIDAVIT: I declare under penalty of perjury pursuant
to 28 USC 1746 that the information contained herein
is true and accurate.

17

3. _____
   _____
   _____
4. _____
   _____
   _____
   _____

*Add another page if more space is needed. Do not use the back of the paper.*

## ACKNOWLEDGMENT

By presenting this form to the court, I certify that to the best of my knowledge, information, and belief, the following statements are true. I understand that if a statement is not true, the court can order a penalty against me (such as to pay money to the other party, pay court costs, and/or other penalties).

1. The information I included in this form is based on facts and supported by existing law.

2. I am not presenting this form for any improper purpose. I am not using this form to:
   a. Harass anyone;
   b. Cause unnecessary delay in the case; or
   c. Needlessly increase the cost of litigation.

3. No judicial officer has said I am a frivolous litigant.

4. There is no court order saying I cannot serve or file this form.

5. This form does not contain any "restricted identifiers" or confidential information as defined in Rule 11 of the General Rules of Practice (https://www.revisor.mn.gov/court_rules/gp/id/11/) or the Rules of Public Access to Records of the Judicial Branch (https://www.revisor.mn.gov/court_rules/rule/ra-toh/).

6. If I need to file "restricted identifiers," confidential information, or a confidential document, I will use Form 11.1 and/or Form 11.2, as required by Rule 11.

December 1, 2024

Date

Signature

Name: _____ Michael Fiorito _____

Address: 19000 Stratford Road_____

City, State, Zip: _____ Minnetonka MN 55345 _____

Telephone: ___ 763 357 1659 _____

E-mail: _____